IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: RAILWORKS CORP., et al. | : | Bankr. Case No. SD-01-64463 |
| | : | |
| * * * * * * * | : | |
| | : | |
| C. WILLIAM MOORE, et al. | : | |
| | : | Bankr. Adversary No. 05-1238 |
| v. | : | Civ. Appeal No. WMN-06-2058 |
| | : | |
| HENRY D. HOGE, et al. | : | |

MEMORANDUM

Before the Court are cross appeals of a decision of the
United States Bankruptcy Court for the District of Maryland filed
by Appellants C. William Moore, Jeffrey Lewis, Michael Rivera,
and Glass & Associates, Inc. (collectively, Defendants), Paper
No. 18, and Appellees and Cross-Appellants Henry D. Hoge, Dona P.
Hoge, and the Henry D. Hoge and Dona P. Hoge Family Trust
(collectively, Plaintiffs), Paper No. 20.  Each appeal has been
fully briefed and is now ripe for decision.  Upon review of the
appellate briefs and the applicable case law, the Court finds
that no hearing is necessary and that the decision of the
Bankruptcy Court shall be affirmed.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In 1979, Henry D. Hoge (Hoge) founded HSQ Technology (HSQ),
a California corporation specializing in software development and
engineering.  In May of 2000, HSQ entered into a design/build
contract with the Port Authority of Allegheny County,
Pennsylvania (PAAC).  In connection with that contract, Liberty

Mutual Insurance Company (Liberty Mutual), issued performance bonds guarantying HSQ's performance.  To secure the bonds, Plaintiffs signed indemnification agreements with Liberty Mutual agreeing to reimburse Liberty Mutual for all amounts paid and expenses incurred by it in connection with the PAAC contract.

Prior to the formation of the PAAC contract, in 1999, Hoge was approached by Michael R. Azarela and John G. Larkin on behalf of Railworks Corporation (Railworks), a provider of rail systems services.  Azarela and Larkin represented Railworks as a financially strong company, expressed an interest in acquiring HSQ, and claimed that HSQ would prosper as a Railworks subsidiary.  Railworks formally acquired HSQ in June of 2000, after the formation of the PAAC contract.  Defendant Moore served as President of Railworks Transit Systems, Inc. and managed the unified operations of certain other Railworks subsidiaries within what was known as the "Transit Systems Group," of which HSQ became a member.[1]  Defendant Michael Rivera served as Vice President and general counsel of Railworks.  Defendant Glass & Associates, Inc. served as financial and reorganization consultants to Railworks and its subsidiaries.[2]

---

[1]  On July 2, 2002, the HSQ board of directors formally appointed Moore as President of HSQ and, under the direction of the Board, on July 16, 2003, Hoge's employment with HSQ was terminated.

[2]  Defendant Jeffrey Lewis was an employee of Glass and Associates.

On September 20, 2001, Railworks and twenty-two of its
subsidiaries, including HSQ, filed voluntary petitions for relief
under Chapter 11 of the Bankruptcy Code.  The cases were jointly
administered in the United States Bankruptcy Court for the
District of Maryland (Bankruptcy Court).  In October of 2001,
PAAC filed a motion in the Bankruptcy Court seeking to have HSQ
assume or reject the PAAC contract.  Following a hearing on that
motion, the Court ordered rejection of the PAAC contract and, as
a result, Liberty Mutual paid approximately $4.5 million to PAAC
under the performance bonds.  Subsequently, Liberty Mutual
obtained a judgment against Plaintiffs in excess of $5 million.
On October 1, 2002, the Bankruptcy Court confirmed Debtors'
Second Amended Joint Plan of Reorganization which contained a
release provision enjoining actions by any claim holder against
representatives of the Debtors.[3]

On September 17, 2004, Plaintiffs filed a civil action in
the Superior Court of California, County of San Mateo.  Former

---

[3]  The release provision of the Reorganization Plan
provides, in pertinent part: "To the fullest extent permitted by
applicable law, each holder of a Claim . . . shall be enjoined
from commencing or continuing any Cause of Action . . . and shall
be deemed to release any Claim or Cause of Action arising from
the beginning of time through the Effective Date . . . against
any Representative . . . in any way relating to the Debtors, the
Reorganization Cases or the Plan; provided, however, that the
foregoing shall not operate as a waiver of or release from, and
shall not enjoin the prosecution of, any Causes of Action arising
out of . . . acts or omissions to act involving willful
misconduct, recklessness or gross negligence . . . ."  Debtors'
Second Am. Joint Plan of Reorganization § 11.6(b).

Defendants Martin Fletcher and Whiteford, Taylor & Preston, LLP,
removed the litigation to the United States Bankruptcy Court for
the Northern District of California, which subsequently
transferred the action to the United States District Court for
the District of Maryland.  Following referral of the action to
the Bankruptcy Court in Maryland, Plaintiffs amended their
Complaint.[4]  The Amended Complaint alleges seven causes of
action: (Count I) breach of an oral contract to protect
Plaintiffs from liability as indemnitors of Liberty Mutual
against Defendant Moore; (Count II) intentional interference with
the contract between Plaintiffs and Liberty Mutual against all
Defendants; (Count III) intentional misrepresentation or
concealment regarding the financial strength of Railworks against
Defendants Azarela and Larkin;[5] (Count IV) general negligence
against all Defendants in failing to present Plaintiffs with
notice of default of the PAAC contract; (Count V) intentional
misrepresentation or concealment against all Defendants regarding
Railworks' financial ability to guaranty HSQ's performance under
the PAAC contract and its ability to protect Plaintiffs from
liability to Liberty Mutual; (Count VI) breach of the Business

---

[4]  Neither Fletcher nor Whiteford, Taylor & Preston are
named as defendants in the Amended Complaint, however, Michael R.
Azarela and John G. Larkin are named as defendants.  Am. Compl.
1.

[5]  Defendants Azarela and Larkin have not appealed the
decision of the Bankruptcy Court.

and Professions Code of California and the California Civil Code against all Defendants; and (Count VII) indemnification from all Defendants for all expenses incurred in the lawsuit brought against Plaintiffs by Liberty Mutual and in pursuing claims in the Railworks and HSQ bankruptcies.[6]

On July 13, 2006, the Bankruptcy Court dismissed Counts I, IV and VII, finding that the third party injunction contained in the release provision of the Reorganization Plan prevented Plaintiffs from pursuing those counts.  The Court held that Counts II, III, and V alleged reckless and willful misconduct, some of which occurred prior to the filing of the bankruptcy petition, which, if proven to be true, would be excepted from release provision.[7]  After finding that Counts II, III, and V were not preempted by the Bankruptcy Code, the Court determined that the relevant factors supported remand of those counts to the Superior Court of California.

In the instant appeal, Defendants argue that the release provision of the Reorganization Plan enjoins all of Plaintiffs' claims and that the Bankruptcy Court erred in not fully

---

[6]  Plaintiffs also seek exemplary damages in connection with Counts III, V, and VI.

[7]  The Court also upheld Count VI, noting that Plaintiffs predicated that claim on the conduct alleged in each of the preceding counts, including the actionable conduct alleged in Counts II, III, and V.  Mem. & Order of the Bankr. Ct. dated July 13, 2006.

dismissing Plaintiffs' Amended Complaint.   Further, Defendants
contend that the remaining claims present state law causes of
action which are preempted by the Bankruptcy Code.   Finally,
Defendants argue that the Bankruptcy Court erred in remanding the
remaining claims to the Superior Court of California.

In their cross-appeal, Plaintiffs argue that the dismissed
claims focus on pre-petition conduct and, as such, the Bankruptcy
Court erred in finding that the release provision of the
Reorganization Plan precluded litigation of the three dismissed
Counts.   Plaintiffs contend that the Amended Complaint should be
reinstated in its entirety, removed from the bankruptcy
proceeding, and remanded to the Superior Court of California.

## II.   STANDARD OF LAW

On appeal from the bankruptcy court, the district court acts
as an appellate court and reviews the bankruptcy court's findings
of fact for clear error and conclusions of law de novo.   In re
Johnson, 960 F.2d 396, 399 (4th Cir. 1992).

## III.   DISCUSSION

### A. Claims Enjoined under the Plan of Reorganization

In exercising its equitable powers, a bankruptcy court may
release the liabilities of non-debtors in certain circumstances.
See In Re A.H. Robins Co., 880 F.2d 694, 702 (4th Cir. 1989)
(finding that a bankruptcy court's power to release liability
exists where the plan is overwhelmingly approved and the
injunction is essential to a workable reorganization).   Here,

neither party questions the validity of the injunction contained
in the release provision of the Reorganization Plan.  Rather, the
parties dispute the scope of that provision, with Plaintiffs
arguing that the claims of the Amended Complaint fit within the
exceptions to the release provision, and Defendants arguing that
the Bankruptcy Court should have construed the provision to
preclude all of Plaintiffs' claims.  As the Bankruptcy Court did,
this Court will review the applicability of the release provision
to each claim of the Amended Complaint separately.[8]

Count I of the Amended Complaint asserts a breach of an oral
contract allegedly entered into between Hoge and Moore prior to
the filing of the bankruptcy petition in which Moore agreed to
protect Plaintiffs from liability as indemnitors of Liberty
Mutual.  Am. Compl. 3.  The Bankruptcy Court held that the
release provision of the Reorganization Plan barred Count I
because the claim stated a general breach of contract and the
alleged liability was asserted against Moore in his capacity as
representative of Railworks.  Mem. & Order of the Bankruptcy
Court 8-9.  Plaintiffs argue that the Bankruptcy Court
misconstrued the allegations of the Amended Complaint which,
properly read, assert a claim against Moore in his individual
capacity, not in his capacity as a representative of Railworks.
Specifically, Plaintiffs contend that their theory of liability
assumes that, in forming the oral contract, Moore was operating

---

[8]  The Bankruptcy Court's decision with respect to Count
III, which has not been appealed, will be affirmed.

outside his representative capacity.

Count I relates to actions allegedly taken by Moore in his capacity as a representative of Railworks.  Plaintiffs do not allege that Moore contracted to accept personal liability to Liberty Mutual for performance of the PAAC contract, but, rather, that Moore, in his capacity as a representative of Railworks, agreed that Railworks would indemnify Plaintiffs from their own personal liability.  <u>See, e.g.</u>, Am. Compl., Attach. A, ¶ 36 ("Hoge advised Moore that he . . . understood and believed that [Railworks] had assumed those liabilities in connection with [Railworks'] acquisition of HSQ"); Letter from Henry D. Hoge, President, HSQ Technology & C. William Moore, Vice President, Railworks Corporation, to Paul P. Skoutelas, CEO, Port Authority of Allegheny County (April 2, 2001) (Guaranty Letter) ("This letter is written on behalf of [Railworks] and its wholly owned, indirect subsidiary, HSQ[.] . . . If PAAC approves the foregoing . . . [Railworks] will guarantee and does hereby guarantee the performance of HSQ in accordance with the terms of the Contract.").  Thus, this Court will uphold the finding of the Bankruptcy Court that Count I is asserted against a representative of the Debtor acting in his capacity as a representative, and, therefore, the release provision of the Reorganization Plan enjoins prosecution of the claim.

In Count II, Plaintiffs allege that Defendants willfully, recklessly, and intentionally interfered with the contract between Plaintiffs and Liberty Mutual by negotiating directly

with PAAC regarding the terms and conditions of the PAAC
contract.  Am. Compl. 4.  Defendants argue that, while Count II
nominally alleges willful and reckless conduct, Plaintiffs fail
to allege facts to support the contention that Defendants
interfered with the indemnification agreement between Plaintiffs
and Liberty Mutual, or that Defendants owed Plaintiffs any duty
of care.  Defs. Br. 14-15.  The Amended Complaint, however,
alleges that, prior to the filing of the bankruptcy, Defendants
negotiated a subcontract with a third party under the PAAC
contract which incorporated the indemnification provisions of
Plaintiffs' contract with Liberty Mutual.  Am. Compl., Attach. A
¶¶ 43-55.  Plaintiffs allege that Defendants did not have the
authority to enter into such a subcontract and that Defendants'
actions constituted willful and reckless misconduct.  Id.; see
also Am. Compl., Attach. A ¶¶ 64-68 (alleging further
interference on the part of Defendants with the Liberty Mutual
contract in the form of a letter written to Liberty Mutual
threatening abandonment of the PAAC contract).  The Court finds,
as Bankruptcy Court did, that Count II alleges actions involving
willful misconduct and recklessness, and, therefore, that Count
II falls within a stated exception to the release provision.
Second Am. Joint Plan of Reorganization § 11.6(b)(y) (Noting that
the release provision will not operate to enjoin the prosecution
of causes of action arising out of "acts or omissions to act
involving willful misconduct, recklessness, or gross
negligence").

In Count IV, Plaintiffs allege general negligence against all Defendants for failure to forward a letter of default sent by PAAC to HSQ's bankruptcy counsel, Martin Fletcher.  Am. Compl. 7, Attach. A ¶ 69.  Plaintiffs contend that their failure to receive the notice of default deprived them of a right to cure, which ultimately resulted in their liability to Liberty Mutual.  Id. ¶ 70-75.  Count IV asserts a general negligence claim based on post-petition actions taken by representatives of the Debtors acting in their capacity as representatives.  The allegations of Count IV are covered by the release provision contained in the Reorganization Plan and, therefore, the Bankruptcy Court's decision to dismiss that count will be upheld.

In Count V, Plaintiffs allege fraud against all Defendants based on Moore's alleged pre-petition representation that Railworks would guaranty HSQ's performance under the PAAC contract and that Railworks would protect them from liability to Liberty Mutual.  Plaintiffs allege that Railworks did not have the financial ability to guaranty HSQ's performance or to assume liability for the Liberty Mutual performance bonds.  Further, Plaintiffs assert that Moore had no authority to make such representations, that he concealed or suppressed facts he was bound to disclose, and that he intended to defraud Plaintiffs and to induce them to act.  Am. Compl. 8.  Unlike Count I, which alleges a general breach of contract, the allegations of fraud contained in Count V, if proven to be true, constitute willful misconduct or recklessness on behalf of Defendants.  Count V,

therefore, falls within the exception to the release provision of
the Reorganization Plan.  <u>See</u> Second Am. Joint Plan of
Reorganization § 11.6(b)(y).

Count VI alleges that the actions underlying each preceding
Count constitute a pattern or practice of activity which violates
the California Business and Professions Code, Cal. Bus. & Prof.
Code § 17200 <u>et seq.</u>, and that Defendants' actions have deprived
Plaintiffs of their retirement assets, in violation of the
California Civil Code, Cal. Civ. Code § 3345.  Am. Compl. 10.
Count VI is predicated on the factual allegations underlying
Counts I-V.  Plaintiffs are enjoined from prosecuting Count VI
only to the extent that they are enjoined from prosecuting the
predicate claims.  Thus, to the extent that Count VI is
predicated upon the allegations of willful misconduct and
recklessness, such as those found in Counts II, III, and V, it is
not barred under the release provision of the Reorganization
Plan.

In Count VII, Plaintiffs request indemnification from all
Defendants for "all expenses incurred in connection with the
lawsuits brought by Liberty Mutual . . . as well as for all
attorneys fees expended . . . defending all collection actions
brought by Liberty Mutual and in pursuing claims in the
[Railworks] and HSQ Bankruptcies."  Am. Compl. 11.  Count VII
seeks indemnification for costs incurred during the course of the
bankruptcy case following the Bankruptcy Court's order of the
rejection of the PAAC contract.  The fees and expenses incurred

by Plaintiffs in "pursuing claims in the [Railworks] and HSQ
Bankruptcies" result directly from the actions of the
representatives of the Debtors, acting in their capacity as such,
in the course of the bankruptcy adjudication.  Thus, Count VII
has been released and Plaintiffs are enjoined from prosecuting it
against Defendants.

B.  Preemption

     The United States Congress has the constitutional power to
preempt state law.  U.S. Const. art. VI; Louisiana Pub. Serv.
Comm'n v. FCC, 476 U.S. 355, 368 (1986).  Among other scenarios,
preemption may occur where Congress expresses a clear intent to
preempt state law, or where Congress has legislated
comprehensively, thus occupying an entire field of regulation and
leaving no room for the States to supplement federal law.
Louisiana Pub. Serv. Comm'n, 476 U.S. at 368-69.  Because
Congress has the constitutional power to enact laws governing
bankruptcies, U.S. Const. art. I, § 8, cl. 4, a number of courts
have held that, by enacting the Bankruptcy Code, Congress has
preempted some state activity on matters affecting bankruptcy.
Koffman v. Osteoimplant Techs., Inc., 182 B.R. 115, 123 (D. Md.
1995) (citing In re Demoff, 90 B.R. 391, 396 (Bankr. N.D. Ind.
1988)).  Conversely, "because the common law of the various
states provides much of the legal framework for the operation of
the bankruptcy system, it cannot be said that Congress has
completely preempted all state regulation which may affect the
actions of parties in bankruptcy court."  Id. (citing Paul v.

12

<u>Monts</u>, 906 F.2d 1468, 1475 (10th Cir. 1990) ("Where the
Bankruptcy Code is silent, and no uniform bankruptcy rule is
required, the rights of the parties are governed by the
underlying non-bankruptcy law.")).

Here, Defendants argue that the Bankruptcy Court erred in
concluding that the remaining claims were not preempted by the
Bankruptcy Code.  They allege that litigation of the remaining
claims will interfere with the bankruptcy process by imposing
state law standards on representatives of the Debtors for
activities undertaken during the management of the Bankruptcy
Cases.  In forming their conclusion, Defendants rely primarily on
the holdings in <u>Koffman</u>, 182 B.R. at 115, and <u>MSR Exploration,
Ltd. v. Meridian Oil, Inc.</u>, 74 F.3d 910 (9th Cir. 1996).

In <u>Koffman</u>, the Court relied on the extensive remedies
provided by the Bankruptcy Code for willful violations of an
automatic stay provision and for the filing of an involuntary
bankruptcy petition in bad faith to find that causes of action
predicated upon that conduct were preempted.  182 B.R. at 125-26.
Similarly, in <u>MSR</u>, the Ninth Circuit held that a malicious
prosecution action arising out of events taking place in the
bankruptcy proceedings were completely preempted under federal
law.  74 F.3d 910, 916.

Unlike the state law claims alleged in <u>MSR</u> and <u>Koffman</u>,
which were predicated upon violations of the Bankruptcy Code,
here, the underlying facts of Plaintiffs' claims do not
presuppose such violations.  Rather, the remaining claims are

13

based either on conduct specifically excepted from those proceedings or on conduct which occurred prior to the filing of the bankruptcy petition.  In such a scenario, "no risk of conflict between enforcement of the state laws and enforcement of the federal bankruptcy laws [exists]." <u>Dougherty v. Wells Fargo Home Loans, Inc.</u>, 425 F. Supp. 2d 599, 609 (E.D. Pa. 2006) (finding that "merely because a Plaintiff brings a state law claim in the context of a bankruptcy matter does not justify preemption of those claims, particularly where the underlying facts of the state law claim are not based on a violation of the Code").  Thus, the Bankruptcy Court's holding that Plaintiffs' claims are not preempted by federal law will be upheld.

C. Remand

Defendants argue that the Bankruptcy Court committed reversible error when it determined that the remaining claims should be remanded to the Superior Court of California pursuant to section 1452(b) of Title 28.  That section provides district courts with discretion to remand a claim or cause of action removed to federal court pursuant to section 1452(a) of Title 28 "on any equitable ground." 28 U.S.C. § 1452(b).  The Bankruptcy Court's decision to remand, like other discretionary decisions, is reviewed only for abuse of discretion.  <u>In re Merry-Go-Round Enterprises, Inc.</u>, 222 B.R. 254, 256 (D. Md. 1998).[9]

---

[9]  In addition to supporting the Bankruptcy Court's decision to remand the remaining claims, Plaintiffs argue that the Court should have abstained from hearing those claims under both the mandatory and permissive abstention provisions found in 28 U.S.C.

In making its remand determination, the Bankruptcy Court
considered several factors, including: "(1) the effect on the
efficient administration of the bankruptcy estate; (2) the extent
to which issues of state law predominate; (3) the difficulty or
unsettled nature of applicable state law; (4) comity; (5) the
degree of relatedness or remoteness to the proceeding in the main
bankruptcy case; (6) the existence of the right to a jury trial;
and (7) prejudice to the involuntarily removed defendants."  Mem.
& Order of the Bankr. Ct. dated July 13, 2006 (citing <u>In re
Merry-Go-Round Enterprises, Inc.</u>, 222 B.R. at 257).  The
Bankruptcy Court properly found that several of these factors
supported remand, noting that the "remaining claims are all based
on State law" and that "the California Superior Court is in a
better position to adjudicate these state law claims."  <u>Id.</u>

---

§ 1334(c).  Conversely, Defendants argue that abstention would
have been inappropriate here, arguing primarily that abstention
cannot apply where no pendent state action currently exists.
While the Fourth Circuit has not addressed the issue, Courts
which have are divided in their interpretations of the
relationship between § 1334 and § 1452.  <u>Compare</u> <u>Sec. Farms v.
Int'l Bhd. of Teamsters</u>, 124 F.3d 999, 1009 (9th Cir. 1997)
(finding that abstention does not apply to state court actions
removed to federal court under 28 U.S.C. § 1452(a) because
"[a]bstention can exist only where there is a parallel proceeding
in state court") <u>with</u> <u>Massey Energy Co. v. West Virginia
Consumers for Justice</u>, 351 B.R. 348, 352-53 (E.D. Va. 2006)
(noting that the majority of courts have concluded that "§
1334(c)(2) [applies] to cases that have been removed under §
1452" and adopting "the majority view that a state law claim
originally brought in state court, then removed, still is
considered 'commenced' within the meaning of the statute").
Here, the Court need not resolve this legal issue because the
Court has found that, in any event, the Bankruptcy Court's
decision to remand the remaining claims to the state court did
not constitute an abuse of discretion.

Specifically, the Bankruptcy Court noted that Claim VI was "based on two California statutes that can best be interpreted by the California Superior Court." Id. Finally, the Bankruptcy Court considered that Plaintiffs have demanded and may be entitled to a jury trial and that the remaining claims are not alleged against the Debtor, but non-Debtor individuals, making the claims at issue sufficiently remote from the Railworks bankruptcy. Id.; In re Merry-Go-Round Enterprises, Inc., 222 B.R. at 257 (noting that additional factors courts have considered include the efficient use of judicial resources and the possibility of inconsistent results). While Defendants argue that each of the factors listed favors denial of remand, the Court finds no evidence that the Bankruptcy Court abused its discretion in deciding that remand was appropriate under the circumstances.

**IV.  CONCLUSION**

For these reasons, the decision of the Bankruptcy Court will be affirmed. A separate order consistent with the reasoning of this Memorandum will follow.


_____/s/_____

William M. Nickerson
Senior United States District Judge


Dated: April 26, 2007

16